The next case, number 241655, Jennifer DeAngelis et al. v. Hasbro, Inc. At this time, would counsel for the appellant please introduce himself on the record to begin? Attorney Steven T. Fanning, Providence, Rhode Island. Go ahead. I'm sorry, for the plaintiff's appellant. You can start. Thank you, Your Honor. It's too high up. I'm sorry. There you go. Just as a quick note at the inception of this case, Your Honor, the plaintiffs, Ms. DeAngelis and Ms. Tomaselli, are both long-term employees of Hasbro, one with nine to ten years of service and one with four years of service. Prior to the incidents that arose with respect to this case, both had unblemished employment records and had never been accused of any type of misconduct, incompetence or any other type of problematic behavior. We're here today, gentlemen, because it's the plaintiff's belief that the district court erred in granting the defendant appellee's 12B6 motion to dismiss the amended complaint in its entirety, even though I would urge that it was well pled and address the issues that were necessary. If we start with the non-retaliation claim, and let's assume after Bazinet, and if my colleagues want to get into this, I encourage them to do so, but under Bazinet, let's assume there was a sincerely held religious belief. You still have to show there was an adverse employment action. What is the adverse employment action? Well, it's fairly extensive, Your Honor. Fairly extensive? Extensive, yes. And is it in total, all those things together, or each of them is an adverse employment action? Well, I would argue that each is, but... Okay, so what is the strongest one? The one you think is most unquestionably, because they're not all the same, some are more significant than others, I take it you would agree with that? Yes, Your Honor. Okay, so what's the one you think is the most adverse? Well, in June of 21, both of the plaintiffs participated in a voluntary charitable effort to clean a children's camp. No children were present, no issues of that nature. Nothing was brought to their attention, they did not wear masks in this process. Nothing was brought to their attention at that time. They were not told that you need to be masked. They were not told anything about any issue with the company regarding that incident. Shortly after, literally a few days after, the two plaintiffs made their good faith request for religious exemption. Shortly after that, both of the plaintiffs received notification that they were being investigated for having shown a lack of integrity and violating the employer's code of conduct. Of course, none of these things are true, but both came with the caveat that you are permanently, I say permanently because the implication was it was permanent, that they would not be eligible for promotions in the future. In effect, the message was that their career at Hasbro was finished. Like desegregating the career is finished. What you're saying is there was a written warning issued after the protected activity or for something that happened before and that you're telling me that the consequence more than just being a note in the file is that precluded them from the opportunity to obtain a promotion. Yes, it did, your honor. And that's an adverse action. Yes, it is. And is that, in the complaint, the complaint alleges that they were prohibited as a consequence of the warning they received from being eligible for promotion? Yes, your honor, it says in the complaint that they were told they would not be eligible for promotions in the future. And does it say that that is a consequence depending on the outcome of the investigation or does it say you are being warned and the consequence of this warning is that you may not be eligible for a promotion? It was more a, the way it's expressed in the complaint, which is accurate, is that they were going to be precluded permanently, at least as of that point. So, depending on the outcome of the investigation or just now I'm just informing you that is what is the outcome? Well, it was different in both cases. Here's paragraph 37. Thomas Selle was informed by the company that because of the warning she would be removed from consideration for two promotional opportunities until she was able to demonstrate she could act with integrity in conjunction with the company's values. That is correct, your honor. Although, I would question what that was intended to mean. She has always acted with integrity. So, the question is now you have to prove you're acting with integrity. And therefore, until you do, you'll be prohibited from these promotions. I should add she had been and it is her position that she had been essentially promised promotions and was the best qualified for them and suddenly was not. Same issue with Ms. DeAngelis, although in her case... Let me go, stick with Thomas Selle for a second because Judge Aframe referred to paragraph 37. I'm looking at 38. You also... I don't know if you're an attorney below, but it reads, Thomas Selle was informed that she was ineligible for consideration for a promotion at that time. It's not forever, it's at that time. It may have been inartful pleading, your honor. It wasn't what I would... That's what's there. Yes, I understand what I meant to say. Let me jump to paragraph 40. Thomas Selle was removed from the company's internal team organizational charts while others on leave remain on these charts. Is that adverse employment action also? Yes. I believe it is, your honor. If you look at all of these in the aggregate, each one of the two plaintiffs have six, seven, eight incidents that arguably... I guess this is where the constructive discharge comes. There are different kinds of constructive discharge. It seems to me there can be... I'm just so mean to you that there's no choice but quitting. That's one kind of constructive discharge. Another kind seems to be like, you're going to show up here every day and we're going to pretend you're not here. And so your job has evaporated. And some of this feels like that when you take in the aggregate, at least that's what you're trying to allege. This is a 12B6, so looking at it in your way. Is that what you were trying to say? In the aggregate, you keep saying in the aggregate. Is that what you mean? Well, it was a gradual progression of negative actions towards both plaintiffs, which clearly implicated that they really had no future at Hasbro. With respect to Ms. DeAngelis, for example, she wasn't just disciplined for her alleged behavior at this camp. She was told this is a final warning, which frankly implicates that at any time she would be eligible for termination for any infraction. And what is the... because you need a nexus between the adverse employment action and the religious belief. Yes, sir. And I take it the one you're trying to establish, notwithstanding the district court's determination, there was no such nexus, at least with respect to the warning and the denial of the promotion. Is it a temporal one? It is temporal, Your Honor. So just help me with the understanding of the timing. Well, the issues regarding the... From the complaint, not from the record. What does the complaint tell me about the timing? The complaint implicates that... Implicates? I beg your pardon? Implicates? Well, the complaint states that within a few days of having made their request for a religious exemption, they began to experience these negative activities, actions on behalf of the company. And does it say when the warning was given relative to the complaint? I don't recall exactly the date of the warning, Your Honor, but it was... It was on paragraph 32. On October 21st, it says the employer opened a code of conduct investigation about the June 30th incident. The June 30th incident is what we're talking about, right? Yes, sir. And when's the warning letter come? When is she apprised? What date is she apprised of the... Well, I think it was roughly commenced or simultaneous with the opening of the investigation. I'm not really... I mean, no disrespect, but I'm not interested in what you think. I want to know what the complaint says. I'm not sure that the complaint actually addresses that. So is that a way of saying it does not address it? I don't recall specifically. Paragraph 34 just says, nevertheless, Tomaselli was given a written warning. So sometime after October 21st was... and then it says she goes on medical leave November 2nd, but there's no connecting of how these things interact. Well, the intention, if I may read the language as you might, was to implicate or state that the... Well, the intention does not... I mean, you know that. No, I understand. We're reviewing a district court who's looking at a complaint. We're just trying to understand what does the complaint say. If the complaint says the right thing, you win. If it says the wrong thing, you lose. Pretty simple. So what does it say? It says that she received a warning letter four months after she participated in this event and probably within... I have to have the dates in front of me. Within a week or two of both her and Ms. Tomaselli asserting their request for a religious exemption. So the timing, in my view, as articulated in the claim... And that's going to be the same for the retaliation claim then, obviously. Yes, it is, Your Honor, yes. The proximity of these events... And how do we know then, given this, how are we supposed to think about it under the relevant case law? I fully understand how the timing works to show its retaliation. It follows the protected conduct. Yes, Your Honor. What would give rise to a reasonable inference that the precipitating cause of the adverse action or, for Burlington purposes, the chilling effect action, which would be the warning letter, was a hostility to the religious belief of the persons as opposed to a hostility to their engaging in the protected activity? I think it's probably both, Your Honor. What does that mean? Meaning that the... Why is it plausible to think that it's based on the religious belief rather than it being based on the protected conduct? Because neither employee had an issue until they articulated... And then the thing they did was engage in protected conduct. So I understand the inference that follows, for purpose of plausibility, that this was retaliation for the protected conduct. I'm having a harder time seeing why do we think that's because of the religious belief. And just to put a point out, the protected conduct, though, raised statements about their religion. So it does bring it in front of the employer, but what makes it us believe that the employer's action was because they have these Christian beliefs? In other words, usually there would be, for that type of thing, as opposed to retaliation claims, a comparator. Other type of people who were complaining about things who weren't complaining about religious beliefs or were not disciplined, et cetera. But you don't have anything like that. Or statements that, you know, I'm the decision maker, that kind of Christianity I don't like. Because what follows from the implication is that any retaliation claim, ipso facto, becomes also a disparate treatment claim, temporarily. And I don't know that our case law has ever suggested as much. Well, I think the problem in this case, Your Honor, is there is the implication of temporal proximity. It's clearly stated in the complaint. We have not been, the district court judge, once she determined that there was no good faith, religious. So, for example, if I don't engage in protective activity, but I do something that manifests my religious belief at work, and then, temporally speaking, some adverse action or chilling effect, adverse action is taken right after that. We do have cases that suggest that can be enough to show. What I'm not as aware of is when the only way the religious belief is manifest is through protected conduct, which I understand why that gives rise to the retaliation claim. Do we have case law that suggests, and that is enough to also support the disparate treatment claim, notwithstanding no comparators or anything like that? But, I mean, what's peculiar is that it raises, the act of the protected activity raises up two things at once. Here's my religion, which you probably didn't know about before, but here it is. And I am seeking an accommodation based on that thing. And then something terrible happens. And so the usual form is in retaliation we say, ah, you complained, something terrible happened, temporal proximity. Can we say the same thing? And I guess what I'm wondering is because we're at a motion to dismiss, do you have to parse it that thin at this point and say, you know, I don't know. Maybe they were mad because I filed the thing. Maybe they're mad because it's my religion. I don't know. But they were mean to me. They did something bad to me after I did this thing and I should get discovery. How do we parse that out? Well, I think in part, Your Honor, you have to, that's why I think this case was dismissed prematurely, I think you have to have some discovery. You have to clarify the issues here. A temporal issue, as I understand it, is not one, I think under bassinet as I recall it, that allows for dismissal at this preliminary stage. If a party is arguing that. Think about just a race discrimination claim or a gender discrimination claim. So you have the employee is a woman. Then the employee complains about sex harassment. Then is fired. I'm sure under a case law that's good under Burling to be retaliation claim. But we wouldn't say, oh, therefore it's also sex discrimination. So, and then here the difference is I suppose you don't walk around with your religious belief known so you can't deduce anything from the fact that they weren't doing anything about it before. Now it's known. Is that enough? Would that mean if a person's race wasn't obvious from just visually looking at them. But then they file a race discrimination claim. Then they're just adverse action against them. Now they have two claims rather than one. Where a person who is more visibly of one race than another only has the one claim. That's what I'm trying to figure out. Yes, I understand what you're saying. I understand what you're saying. But in this instance, these two women with unblemished records at some point said, we have strong religious beliefs against using aborted fetus cells for this COVID vaccination. After that, their jobs were never the same. So, you know, I'm quite sure there should be some discovery in this case to clarify those issues. Perhaps a mandate, another case. But there seems. I see what you're saying. Thank you. Thank you. Thank you. Thank you, counsel. At this time, would counsel for APLE please introduce herself on the record to begin. Good morning and may it please the court. My name is Leslie Parker and I represent the APLE Hasbro Inc. In this case, the sheer number of allegations in a complaint do not advance this complaint to a plausible claim. Even when viewed in the light most favorable to the plaintiffs. But on the retaliation claim, I take it, even if it's not an adverse employment action, it's certainly enough under Burlington to be chilling. No? I don't think I agree, Your Honor. Well, I don't agree, Your Honor. First, on the retaliation claim, there are a few issues. First, there's no chilling effect under Burlington Northern. Also, there's a causation issue as well. What's the causation issue? So, although the plaintiff is claiming that he has alleged some sort of temporal proximity, even if he has, that doesn't always get you to a plausible claim. Two days after? I mean, if we're at a complaint, we know nothing. We know June 30th they do something at an activity. Nothing happens. They file their request on October 7th. Within two weeks, they're said, Aha, we're going to investigate what you did back on June 30th, now as we get to the end of October, and now we're going to punish you for it. And they say, and that will deprive me of opportunities at work. So, again, you may win the case, I have no doubt. You could get the summary judgment, and there's a totally good explanation for that, and this case goes away. But how can we say at this point that one possible reason that could have been is you didn't like either the accommodation itself or what they wrote in the accommodation request? When this Court looks at a complaint for the purposes of a motion to dismiss, it uses its own common sense, and it looks at the context. Yeah, my common sense says it could be. Well, maybe it could be. Also, there's an obvious alternate explanation here.  What it is is we're looking at 2021, and we all know what it was like then. Hasbro has just issued a policy about vaccination and returning to the office. They're trying to ensure that their employees feel safe, that they feel comfortable in the office, and so they have to make sure that they are enforcing every COVID-related policy, and that includes their masking policy. Well, why in June? Why are they working on something in October that happened in June? That's not... Right, they wouldn't know why. There's nothing in the complaint about that? They wouldn't know why. They would just know, I did it in June, and they're coming after me in October, and it appears to be right after I did something to get a benefit under the COVID policy. So, my supposition is that's why they did it, and I agree that that could totally be justifiable. But what else are they supposed to do at a 12B6 other than that? At a 12B6, they should also explain that this obvious alternate explanation is not possible. What is the obvious alternate one? That when this policy was put out, the return to work vaccination policy... How does that make it obvious that they would have taken all the time they took to suddenly investigate the prior incident? Well, the employer needed at that point to enforce its policies and to ensure that... Going forward, it could do it, but what would be the explanation for going back in time to this much earlier thing that never precipitated any inquiry? That's not clear from the... Well, that's the problem. You don't have an equally obvious explanation, because it doesn't seem it's obvious why you would do that. What you just said is, well, COVID became really serious, so we decided to put the hammer down. So, we went back, and we found every bad thing that happened in violation of COVID, and we went after it. And maybe that's true, and maybe that's non-retaliatory, and that's your position, and that's why we have litigation. But I don't understand why we would truncate it now when they say A, you say B, and I'm like, well, I don't know. They both sound good to me. I think that the explanation for that time period was, okay, everyone's coming back to the office. We can't have folks thinking it's okay not to be in masks. But you're supposing, or you think... And again, I quote the phrase you used a couple times, alternate explanation. Isn't this something again? It's making me think maybe there should be some discovery here. I mean, the test is whether it's an equally plausible. When there is an equally good one, then we don't say it's plausible to go with you. You've got to have a little bit better as the plaintiff, even though we're dealing with plausibility. It's not equally plausible that they would go back in time to find every single thing. It doesn't... Anyway, okay, so assuming that the temporal piece, I take it, do you suggest that the warning letter, taking all the ambiguities about what the warning letter ultimately said, but taking it as pled, that's enough as a chill, isn't it? I don't... It is not. Okay, why not? It's not because looking at the warning letter and how it's pled, and I'll talk about the promotion piece when I talk about this. It's a mere admonition. It does not... It has not been pled with formal consequences here. That would give rise to a chilling effect under Burlington Northern. Do you need the formal consequences for it to be a chilling effect? I know you do for adverse employment. I didn't think you needed that for a chilling effect. If you're being investigated for your past conduct months ago, it could result in the following terrible things. That's not going to chill you? It will not chill you, and that's because there's a warning that's provided to you. It doesn't affect your job... So even if there's no promotion, I know you're going to talk about promotions later, but at least as pled, it says, here's the warning, and guess what? As a result of that, you are not eligible for any promotions coming down the pike until you can prove to us that you can behave better or whatever. So if that's retaliatory and I'm sitting there deciding, should I complain or should I not complain? If I do complain, they're going to issue one of these things to me, and I will have no opportunity to seek promotions until they decide I'm good enough. You don't think that would dissuade me from going forward? It would not, Your Honor, in this case, because here there are no promotions pled. So why does that need to be? I understand your point. Like right now, even though they say there were two promotions, there's no other facts that really shed any light on that. But even if there weren't, promotions will happen. It's a big company. Things will happen, and I have been told, you are out of the running until we bless you as, you know, you're back in the game because we think you've behaved well enough. And so if I'm sitting there pre-complaint, wouldn't that suggest to me don't do this because you're not going to have any chance to move forward in this company until they decide in their good graces to put you back on the eligible list? That seems dissuading to me. It shouldn't be, Your Honor, because if you know that fact, there's still, I'm speaking in hypotheticals now, there could be an opportunity to still apply for a promotion and make your argument about why you should get it. It's without the facts about the specific promotions at issue, there's not enough there to take that from you impossibly. And that's the same argument for adverse employment action, obviously. Yes, Your Honor. Okay, but she pleads, in the case, for example, of Thomas Shelby, paragraph 38, she was informed that she was ineligible for consideration for a promotion at that time. So we have to take that as a given. We can't say, well, maybe yes at some other point, but that's what she's pleading there. Yes, Your Honor, and first it says at that time. So the court was earlier questioning plaintiff's counsel regarding that exact issue. When does that end? But more importantly, she doesn't say that, she says she was removed from consideration for two promotional opportunities. She doesn't say what those opportunities were. Was she qualified for them? Did someone ever get them? If so, did they have a religious exemption? What about paragraph 40? She was removed, Tomaselli, from the organizational charts of the company. And you add that to her other allegations. That allegation, I believe, says she was removed while she was on leave. However, it does not claim that when she returned she didn't have a job, that she had different job duties. Simply, while she was out, her name was off of the. Let's say we think the warning letter suffices under Burlington to be a chilling effect for the retaliation claim. I know you don't agree with that. Let's say it also suffices to constitute an adverse employment action. What do you say about the nexus issue? Not with respect to retaliation, but with respect to the disparate treatment claim. So with respect to the nexus issue on the discrimination case, there is nothing connecting the two. The thing that connects it is now they know her religious belief and before they didn't. Yes, except that there's no allegation that anyone ever made any comment, acted in any way about anything relevant to their religion. We can't really divorce ourselves from the world as it existed, right? So COVID is happening. Vaccination is viewed by many as a chance to get us past COVID. And then some people come forward and say, I won't participate in that. And here is my religious explanation as to why that some people viewed as invalid. We wrote a little bit about that in Bazinet. So there was tension about this. We know that as just sort of like facts as they were in the world. And that's the background of which all of this is happening. So do I know? No. But new information that's controversial about someone's religion as it relates to COVID came on the scene. Does that add a motion to dismiss? We should just ignore it. It's not enough, Your Honor, for a motion to dismiss. It's not enough to plead a plausible claim because it's like a case in which maybe there was one comment. This would seem to implicate the equally plausible alternative explanation. Yes. Which is that it's equally plausible. It was just protected activity. And so until you have something that moves the needle a little bit more, why should that be enough to be supportive of the district treatment claim? That's the idea, I guess. Right. There's nothing else here that gets it across that line from possibility to plausibility. And this Court, in other cases, in different circumstances, has said it's not enough to just have that one comment or to have just one issue. And that's where we are here. There's no evidence that anyone was treated differently. And, in fact, the policy for remote work for Hasbro was not just for individuals who had a religious or medical exemption. It was just if you didn't feel comfortable coming to work, you could work remotely. So for all we know, people could have just thought they didn't want to come to work because they were uncomfortable. Why can't I read the complaint sort of as I read all of it as a constructive discharge claim? So I look at something that troubles me a little bit, if I'm trying to put this theory together, is I come back and they know I'm not masked, right? I've already disclosed or I'm sorry, I'm not vaccinated. And they immediately say, you're going to go to this convention where you need to have a vaccination. And you're going to do this other thing where you need to have a vaccination. And they also tell me if I can't do my job because I don't have a vaccination, I'm going to be subject to the disciplinary policies of the company. And they've taken me off the organizational chart. And my supervisor says, we never thought she was coming back. And, and, and. So I put all those things together and it starts to look like they really didn't want me here anymore. And that to me, at least I'm asking you, can that be a way to look at the facts sort of as a whole, as a constructive discharge? I agree, I can't pull out facts and say, wow, this one thing that happened was so egregious. But what about the sweep of it? The sweep of this case doesn't get to a constructive discharge claim. It's not so intolerable. So that to me, I asked this question before, but I'll ask it of you. It seems to me there can be two types of that. One is the stuff is just so mean and so terrible. And that is definitely a kind of constructive discharge. But isn't there another kind where the message is given to me loud and clear, we do not want you here. Your duties are stripped. You are just, you know, showing up with no responsibility. Can that be a constructive discharge? That could be in other cases, but here they weren't stripped of their duties. They worked remotely. In fact, in the documents attached to the complaint in their religious exemption request, one of the plaintiffs states, I've been working remotely since March 2020, and I think I'm better working remotely than I am being in the office. So when you look at this complaint, it's two employees who wanted to work remotely, were allowed to work remotely, didn't have any job duties changed. And yes, their colleagues knew they were working remotely, and they knew they went on leave. But that's a fact that you can't hide in a modern workplace. And yes, they did receive the written warnings. But as we've discussed, those did not carry the tangible consequences you would need. So the sweep of the allegations here doesn't bring it to that level of so intolerable that they cannot continue in their employment. Thank you. Thank you, Your Honors. Thank you, Counsel. That concludes argument in this case.